FILED

2016 Sep-14  AM 10:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RODNEY GARRETT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:13-cv-01297-MHH** |
| | } | |
| **DAY AND ZIMMERMAN NPS, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

### <u>MEMORANDUM OPINION</u>

This Title VII race discrimination case has been pending before a magistrate judge.  The magistrate judge entered a report in which she recommended that the Court grant defendant Day and Zimmerman NPS, Inc.'s motion for summary judgment on plaintiff Rodney Garrett's Title VII claim.  (Doc. 40).[1]  Mr. Garrett filed timely objections to the report and recommendation.  (Doc. 41).  The Clerk of Court reassigned the action to the undersigned to review Mr. Garrett's objections.  (Doc. 42).

---

[1] In her report, Magistrate Judge Cornelius also addressed Mr. Garrett's motion to compel and Day and Zimmerman's motions to strike.  (Doc. 40).  No party objected to Judge Cornelius's recommendations regarding these motions.  The Court accepted Judge Cornelius's recommendations concerning the motion to compel and the motions to strike.  (Doc. 44).  This memorandum opinion addresses only Day and Zimmerman's motion for summary judgment.

In his objections, Mr. Garrett argues that he does not have to offer comparator evidence to prove his Title VII claim.  Eleventh Circuit precedent supports Mr. Garrett's argument, so the Court will sustain this objection.  Mr. Garrett also argues that he has provided sufficient evidence to create a dispute of material fact concerning discriminatory intent.  The record viewed in the light most favorable to Mr. Garrett does not support this argument, so the Court will overrule this objection and enter summary judgment for Day and Zimmerman.  The opinion that follows explains the Court's decision.

## I.      STANDARD OR REVIEW

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party objects to a report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*  The Court reviews for plain error proposed factual findings to which no objection is made, and the Court reviews propositions of law *de novo*.  *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993); *see also United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam), *cert. denied*, 464 U.S. 1050 (1984) ("The failure to object to the magistrate's findings of fact prohibits an attack on appeal of the factual findings adopted by the district court except on grounds of plain error or

manifest injustice.") (internal citation omitted); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

## II.    DISCUSSION

### 1.    Mr. Garrett may establish a *prima facie* case of race discrimination without providing comparator evidence.

The Court sustains Mr. Garrett's first objection with respect to the proposition that a Title VII plaintiff does not have to demonstrate "the existence of a similarly situated employee if there is other evidence of discrimination present." (Doc. 41, p. 3). "Employees who believe that they are the victims of racial discrimination may [] present direct evidence of that discrimination." *Flowers v. Troup County, Ga. School Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015). "When direct evidence of unlawful discrimination is lacking, Title VII plaintiffs may instead turn to the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." *Id.*   Under that framework, a plaintiff may establish a prima facie case by showing: "(1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." *Flowers*, 803 F.3d at 1336.  But "'the *McDonnell*

*Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion' in Title VII cases." *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

"The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson v. B/E Aerospace*, *Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). "[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Lockheed-Martin Corp.*, 644 F.3d at 1328. "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*; *see also Flowers*, 803 F.3d at 1336 ("The critical decision that must be made is whether the plaintiff has 'create[d] a triable issue concerning the employer's discriminatory intent.'") (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328).

A plaintiff's race discrimination claim may survive summary judgment if the evidence, viewed in the light most favorable to the plaintiff, "presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Lockheed-Martin Corp.*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011)). "Whatever form it takes, if the circumstantial evidence is sufficient to raise 'a reasonable inference that the employer discriminated against

4

the plaintiff, summary judgment is improper.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012) (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328). A Title VII plaintiff may use the same evidence to establish both pretext and a *prima facie* case. *Wilson*, 376 F.3d at 1088.

Mr. Garrett, an African-American male, has attempted to carry his burden at the summary judgment stage by identifying evidence that demonstrates discrepancies between the way in which Day and Zimmerman investigated Sharon McDaniel's complaint against him and the way in which the company investigated his complaint against Ms. McDaniel, a Caucasian female. Ms. McDaniel and Mr. Garrett both worked at the TVA's Browns Ferry nuclear plant, but they worked for different contractors.[2] Mr. Garrett and Ms. McDaniel had a number of encounters that led to their complaints against one another. Mr. Garrett contends that the record illustrates that as compared to the company's treatment of the complaint lodged by Ms. McDaniel, Day and Zimmerman was less diligent in its investigation of his complaint and more willing to question his credibility. (Doc. 28, pp. 17-21). A plaintiff may use these sorts of inconsistences to establish discriminatory intent. *Alvarez v. Royal Alt. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (to establish indirect evidence of pretext, a plaintiff may show that there are "'such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[2] TVA is an acronym for Tennessee Valley Authority.

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'") (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Therefore, the Court will examine the circumstantial evidence that Mr. Garrett has presented in support of his Title VII claim.[3]

### 2. Mr. Garrett's circumstantial evidence does not create a triable issue of fact concerning Day and Zimmerman's discriminatory intent.

For his second objection, Mr. Garrett maintains that he submitted sufficient circumstantial evidence to create a genuine issue of material fact as to whether Day and Zimmerman's proffered reason for terminating him was a pretext for discrimination. The Court overrules this objection. Mr. Garrett's circumstantial evidence falls short of creating a question of material fact concerning racial animus.

The record demonstrates that Mr. Garrett's employer, Day and Zimmerman, is a private contractor that provides services to the TVA at the Browns Ferry nuclear plant located near Athens, Alabama. Day and Zimmerman's employees

---

[3] At the summary judgment stage, although Mr. Garrett described in a fair amount of detail evidence which he contends illustrates the discrepancies between the two investigations, he used comparator language to introduce his argument. The Court accepts the legal proposition on which Mr. Garrett's objection rests, but the Court understands how the magistrate judge may have believed that Mr. Garrett was pursuing only a comparator argument. Mr. Garrett does not specifically object to Judge Cornelius's findings regarding his comparator evidence. The Court agrees with Judge Cornelius's conclusion that Mr. Garrett cannot establish a prima facie case through comparator evidence.

must comply with the company's employment policies and with the TVA's employment policies. Because of public safety issues concerning nuclear power, the federal Nuclear Regulatory Commission has issued regulations to ensure the safe operation of nuclear plants like the Browns Ferry plant. Those regulations help shape the TVA's employment policies. (Doc. 23-1, p. 3; *see also* Doc. 22, pp. 4-6; Doc. 28, pp. 3-4).

Day and Zimmerman decided to terminate Mr. Garrett's employment after he had three run-ins with Ms. McDaniel in the spring of 2012.[4] After the final encounter, Ms. McDaniel reported to Day and Zimmerman supervisors that she felt threated because Mr. Garrett told her "you're going to get popped." Mr. Garrett denies making the remark. Day and Zimmerman's site manager investigated Ms. McDaniel's complaint and placed Mr. Garrett on paid leave during the investigation. Following weeks of investigation, Day and Zimmerman's human resources director recommended that Day and Zimmerman terminate Mr. Garrett without eligibility for rehire because of the seriousness of threats of physical violence at a nuclear plant. In support of the recommendation, the HR director cited the TVA's Employee Discipline Policy which states that "violence, threats, harassment, intimidation and other disruptive behavior in our workplace will not be tolerated." (Doc. 23-23 p. 5; *see also* Doc. 23-3, p. 5). The HR director asked

---

[4] For details concerning those encounters, please see Doc. 40, pp. 5-8.

the TVA to approve Mr. Garrett's termination through the TVA's Adverse Employment Action procedure. (Doc. 23-23, p. 5; *see also* Doc. 23-25, p. 2).

When an employer offers an employee's violation of a work rule as the justification for termination, the employee can demonstrate pretext by showing that he did not violate the work rule. *Winborn v. Supreme Beverage Co. Inc.*, 572 Fed. Appx. 672, 675 (11th Cir. 2014). However, "[w]hen considering whether an employee's termination based on alleged misconduct was merely a pretext, the proper inquiry is whether the employer believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge." *Id.* (citing *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991)). The plaintiff's burden "is to show not just that [the defendant's] proffered reasons for firing [him] were ill-founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010). Therefore, to overcome Day and Zimmerman's motion for summary judgment, Mr. Garrett cannot merely deny that he threatened Ms. McDaniel so as to establish that he did not violate the TVA's workplace policy prohibiting threats and violence. Rather, he must offer evidence that establishes that Day and Zimmerman did not really believe that he threatened Ms. McDaniel – or at least that Day and Zimmerman's investigation of the threat was inadequate – and that

the company really fired him because it was biased against him because of his race. Mr. Garrett's evidence falls short on both counts.

The record demonstrates that Day and Zimmerman conducted a thorough investigation of Ms. McDaniel's complaint. The company interviewed Mr. Garrett twice and spoke with witnesses to the encounters between Mr. Garrett and Ms. McDaniel. The company also conferred with a representative from the Browns Ferry security department. (Doc. 23-9, p. 2; Doc. 23-11, p. 4; Doc. 23-14, pp. 5-6).

The record demonstrates that the information that Day and Zimmerman gathered during its investigation substantiated Ms. McDaniel's allegation that Mr. Garrett threatened to "pop" her. A witness provided a statement in which the witness "indicated that [he] heard Garrett say that he was going to 'pop'" Ms. McDaniel. (Doc. 23-24, p. 2). Day and Zimmerman confirmed that the witness did not have a relationship with Ms. McDaniel that would bias the witness towards Ms. McDaniel. (Doc. 23-14, p. 2; Doc. 23-24, p. 2). Day and Zimmerman did not determine the proximity of the witness to Mr. Garrett during the encounter between Mr. Garrett and Ms. McDaniel. (Doc. 23-13, p. 12). Day and Zimmerman's HR director concluded that Mr. Garrett's denial of Ms. McDaniel's accusation was "not credible." (Doc. 23-23, p. 4, n. 2; Doc. 23-24, p. 2).

Finally, the record demonstrates that Day and Zimmerman decided to recommend Mr. Garrett's termination in deference to the TVA's workplace safety

policy. Day and Zimmerman's HR director initially gave Mr. Garrett the benefit of the doubt, stating that based on what she had learned within the first week of the investigation, she "would not consider this encounter to be one that rises to a level to warrant termination. It sounds like [Mr. Garrett and Ms. McDaniel] both gave attitude to each other." (Doc. 23-14, p. 6). But the HR director acknowledged that she had to consider "how TVA would view an employee saying they would 'pop' another employee." (Doc. 23-14, p. 6).

Consultation with a representative from the Browns Ferry nuclear plant security department produced the following information:

- that if it were a TVA employee it would most likely result in the removal of an individual's badge for several days and possibly loss of pay during this time.

- If it was a contractor there are more harsh ramifications including removal from site access and suspension.

(Doc. 23-14, p. 5). Based on this information and all of the information that Day and Zimmerman collected in its investigation, Day and Zimmerman recommended Mr. Garrett's termination because of a "threat of physical violence [] made against another contract employee" at the nuclear plant. (Doc. 23-25, p. 2; *see also* Doc. 23-24, p. 3).

"The factual issue to be resolved" in this case "is not the wisdom or accuracy" of Day and Zimmerman's conclusion that Mr. Garrett violated a TVA safety rule. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). The Court

"[is] not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether" Day and Zimmerman's "proffered reasons were 'a coverup for a . . . discriminatory decision.' *McDonnell Douglas,* 93 S.Ct. at 1826." *Id.* The Court "'[is] not in the business of adjudging whether employment decisions are prudent or fair. Instead, [the Court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" *Id.* (quoting *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999)).

Mr. Garrett's pretext argument rests on evidence that demonstrates that Day and Zimmerman did not thoroughly investigate his contention that Ms. McDaniel used the "n" word and told him that "she doesn't like black people." (Doc. 23-2, p. 38; Doc. 23-14, p. 2). In a handwritten statement that Mr. Garrett faxed to Day and Zimmerman, he asserted that Ms. McDaniel called him a black "m-f'er" and repeatedly used the "n" word. (Doc. 23-15, pp. 5-6). For purposes of summary judgment, the Court accepts Mr. Garrett's description of Ms. McDaniel's conduct. On the record in this case, the Court also accepts Mr. Garrett's contention that Day

and Zimmerman did not investigate his allegation as thoroughly as the company investigated Ms. McDaniel's allegation that Mr. Garrett threatened her.[5]

Under different circumstances, racial slurs and disparate investigations might provide a pathway to trial, but this evidence does not help Mr. Garrett on the record in this case, given the legal standard that governs his Title VII claim. Even if the Court assumes that Ms. McDaniel uttered racial slurs and that Day and Zimmerman gave less attention to Ms. McDaniel's discriminatory statements than to Ms. McDaniel's accusation that Mr. Garrett threatened to pop her, the result would not change because Ms. McDaniel was not an employee of Day and Zimmerman, and the racial slurs do not trump the TVA's policy that prohibits threats and violence at the Browns Ferry nuclear plant. Because Ms. McDaniel was not a Day and Zimmerman employee, Mr. Garrett cannot attribute Ms.

---

[5] The record demonstrates that after his second encounter with Ms. McDaniel, Mr. Garrett told his supervisor that there was friction between him and Ms. McDaniel. During this conversation, Mr. Garrett did not suggest that Ms. McDaniel had directed racial slurs to him. (Doc. 23-2, pp. 37-38). Following the third Garrett-McDaniel encounter, during an April 8, 2012 interview about the incident, Mr. Garrett did not mention racial slurs. Mr. Garrett first complained about racial slurs in his second Day and Zimmerman interview on April 17, 2012. (Doc. 23-2, p. 40; Doc. 23-14, p. 4; Doc. 23-23, p. 3). During that interview, Mr. Garrett described the racial slurs and identified two witnesses to Ms. McDaniel's conduct. Day and Zimmerman's HR director indicated that she would like to interview both witnesses, but she actually interviewed only one of the witnesses. That witness, a Day and Zimmerman employee, stated that he did not hear Ms. McDaniel use derogatory language. (Doc. 23-13, p. 18; Doc. 23-19, p. 3). Day and Zimmerman did not interview the other witness who was an African American female who worked for another contractor. That witness testified in her deposition that no one from Day and Zimmerman attempted to reach her. (Doc. 28-1, p. 11). There also is evidence from which jurors could reasonably infer that Day and Zimmerman discounted Mr. Garrett's complaint because he previously complained about racial remarks that he attributed to Day and Zimmerman supervisors, and Day and Zimmerman found no facts to support the allegation that Mr. Garrett's supervisors were racially biased.

McDaniel's discriminatory statements to Day and Zimmerman, and Day and Zimmerman had no ability to take direct action against Ms. McDaniel even if she had called Mr. Garrett the "n" word.  Moreover, even if the statements might provoke a response, a response that includes a threat of violence violates the TVA's safety protocol at the Browns Ferry nuclear plant.  Day and Zimmerman based its employment recommendation on safety standards that its customer imposed on the contractors who worked at the plant, and that customer, the TVA, did not object to Day and Zimmerman's recommendation to terminate Mr. Garrett. (Doc. 23-26, p. 2).  The TVA concluded that the proposed termination was "based on legitimate, non-retaliatory reasons" and was "complaint with TVA policy." (Doc. 23-26, p. 2).

Thus, even if Mr. Garrett did not threaten to "pop" Ms. McDaniel, Mr. Garrett has not offered evidence from which a jury could conclude that Day and Zimmerman's decision to terminate his employment was motivated by race. Therefore, Mr. Garrett's pretext argument fails.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants Day and Zimmerman's motion for summary judgment.  By separate order, the Court will enter judgment in favor of Day and Zimmerman on Mr. Garrett's Title VII claim.

**DONE** and **ORDERED** this September 14, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE